UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,        )<br>                                                          )<br>            v.                                         )      No.21-cr-586 (RC)<br> ANTONIO FERRIGNO                       )<br>                                                          )<br>            Defendant.                         )<br>_____) | |

### DEFENDANT, ANTONIO FERRIGNO'S, SENTENCING MEMRANDUM

Antonio Ferrigno, through undersigned counsel, submits this sentencing memorandum for the above captioned matter.  For the reasons set forth herein, the defense requests this Court sentence Mr. Ferrigno to a 12-month period of probation, a $250.00 fine, the agreed upon $500.00 restitution, and 40 hours of community service.

### 18 U.S.C. 3553(a) ANALYSIS

   Mr. Ferrigno is a young man who is a full-time caretaker of his grandfather and has never been involved in any trouble before the instant offense.  An analysis of the nature and circumstances of the offense and the history and characteristics of Mr. Ferrigno under the 18 U.S.C. 3553(a) factors, supports a sentence of 12 months-probation, the agreed upon $500.00 payment of restitution, a $250.00 fine, and 40 hours of community service.

   The defendant, and his two friends from Brooklyn, spent about 10 minutes in the Capitol, without permission, on January 6, 2020.  Leading up to their trip to Washington, Mr. Ferrigno's group communicated via social media about the election and the January 6, 2020, rally in D.C.  It should be noted that Mr. Ferrigno's statements tend to be more benign[1] than many other individuals' statements in social media who attended the "Stop the Steal" rally, and even his statement from January 6, 2020, "Let's see what happens it's gonna end up being an all out civil war." (PSR p.21), seems more predictive of the "other side's" behavior when read in context with, "Be ready for civil war to erupt because the liberals are gonna riot." (PSR p.16). Perhaps best reflective of Mr. Ferrigno's mindset is his realization that, "Yeah, this is nothing like the million maga March that was a great experience something don't feel right about this one… People are

---

[1] See PSR paragraphs 14c and 20. "It's ok guys let Biden when [sic]. Sit back and watch what happens when we go to court," and "The election will be overturned to the right legal decision."

1

trying to break into the capitol right now." (PSR p.23) In the aftermath of January 6th, Mr. Ferrigno arguably is the most level-headed of his group, mostly admonishing his friends to delete incendiary messages. Clearly Mr. Ferrigno broke the law when he entered the Capitol on January 6, 2020, but his actions are consistent with the majority of other similarly situated defendants who pled guilty to a class B misdemeanor and were sentenced to probation.

As a full-time caretaker for his grandfather, Mr. Ferrigno is wholly responsible for his grandfather's needs during the day. Mr. Ferrigno's grandfather is in his eighties, suffers from diabetes and COPD, among other ailments, and requires intensive, hands-on care. Mr. Ferrigno prepares his grandfather's medicine for each week, makes daily his breakfast and lunch, looks to see any daytime bathing requirements are met, transports his grandfather to any medical appointments, and does any necessary shopping. In the evening, Mr. Ferrigno is relieved by a night nurse.

Mr. Ferrigno's obligations to his grandfather now occupy his working day, but he is planning for the future. Mr. Ferrigno is on the wait list to take the New York City Firefighters Entrance Exam[2], and he also intends to take the New York City Sanitation Department Exam. Mr. Ferrigno seems like a grounded young man with a commitment to being a productive citizen in his community of New York City.

A sentence of probation is supported by the 18 U.S.C. 3553(a) factors. Although the government may argue that a term of imprisonment is supported by the "need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense", the other factors buttress a period of probation. This is Mr. Ferrigno's singular contact with the criminal justice system. The collective experience, across both federal and state courts regarding specific and general deterrence, is that a defendant with no criminal history convicted of a misdemeanor is effectively deterred from future criminal conduct by the mere experience of arrest, conviction, and adherence to the rules of probation. Mr. Ferrigno has been on pretrial release since his arrest almost a year ago without any issues. The public safety factor reinforces a probation sentence. The rest of the 18 U.S.C. 3553(a) factors, from providing the defendant with needed services to avoiding disparate sentences for similarly situated defendants[3] point towards the defense recommendation of a sentence that is sufficient but not greater than necessary, probation.

Lastly, I've spoken with Mr. Ferrigno on numerous occasions about his actions that day. He is a polite and considerate young man. He knows what he did on January 6th was stupid and illegal. I'm confident it will be an aberration in an otherwise law-abiding life.

Respectfully submitted,

TOM YOUNG
Assistant Federal Defender

---

[2] A Class B Misdemeanor should not automatically disqualify Mr. Ferrigno from consideration of employment at the FDNY.

[3] Although the sentencing of January 6th defendants of B Misdemeanors is fluid, the majority sentenced to date who have no criminal history received sentences of probation.